ENGLAND, Justice.
Patricia A. Watson was working as a seamstress for Max Khan Curtain Corporation, in Evergreen, in August 1992 when Macy Adkins, Jr., and Alvin J. Cawthon came to the plant, as agents of LifeUSA Insurance Company, to speak to employees about employee benefits, such as a retirement plan and membership in a credit union. Watson claims they told her that by “investing” $7.50 per week into a retirement plan operated by LifeUSA (approximately $30 per month), she would have $39,799 at age 65, which she could take in monthly increments of $343, or that she could take the $39,799 out in a lump sum. She states that she was shown a document styled “Life Income provider,” which showed an interest rate of 7 1/2% being paid on the money she could pay into the plan. She alleges that she was told she could take the money out at any time before she reached age 65, and that if she did so she could get all the money she had paid in. Watson claims she was told that if she died before reaching retirement age, her beneficiary would receive $18,500 in death benefits. Finally, Watson says that she was told that if she became disabled LifeUSA would make her $30 a month contribution to the plan for as long as she remained disabled.
Watson claims that she signed a Life-USA application and that when she signed it she believed it was for a retirement plan. She says that after paying $30 a month for four years (a total of approximately $1,400), she canceled the “plan” but received only $407.31 from LifeUSA. In February 1998, Watson sued LifeUSA and its agents Adkins and Cawthon, alleging fraud; the fraud, she alleged, was that she was told she was applying to participate in a retirement plan when in fact she was applying for life insurance. She says she discovered the fraud in February 1998.
With her complaint, Watson propounded interrogatories and requests for production of documents. She later moved to compel LifeUSA to respond to her discovery requests. The motion to compel alleged that LifeUSA had failed to give complete answers to several of her interrogatories. One interrogatory requested copies of applications for life insurance that Cawthon and Adkins had filed with LifeUSA.
*751 On September 10, 1998, the trial court ordered the defendants to produce copies of all LifeUSA applications that agents Cawthon and Adkins had submitted between 1992 and 1997. The defendants filed a “motion to reconsider” that order. After hearing additional arguments by the parties, the trial court limited its order to disclosure of applications taken by Caw-thon and Adkins in the States of Alabama and Georgia between August 1987 and August 1992. The defendants petitioned this Court for a writ of mandamus, directing the trial judge to vacate its order compelling production of the applications taken by Cawthon and Adkins.
Watson states that “[according to the Alabama Department of Insurance agent files, Adkins and Cawthon were not licensed/appointed to sell insurance products for LifeUSA in Alabama until late 1992 (Adkins) and early 1993 (Cawthon).” She argues that all products sold for Life-USA before August 1992 would have been sold in Georgia or in other states other than Alabama. Thus, she argues, the limiting of the trial court’s order to the State of Georgia was reasonable, given the nature of Watson’s claims and her “particularized need” for the discovery sought.
Cawthon argues that he should not be compelled to produce the applications taken in Alabama and Georgia because, he says, he never dealt with Watson. All three petitioners argue that Watson’s request for copies of applications was not relevant to any issue that could arise in Alabama because the request sought information about LifeUSA’s insurance sales in Georgia, and was therefore overly broad and compliance with it would be unduly burdensome.
“Mandamus is the ‘proper means of review to determine whether a trial court has abused its discretion in ordering discovery, in resolving discovery matters, and in issuing discovery orders so as to prevent an abuse of the discovery process by either party.’ ” Ex parte Compass Bank, 686 So.2d 1135, 1137 (Ala.1996), quoting Ex parte Mobile Fixture & Equip. Co., 630 So.2d 358, 360 (Ala.1993). One seeking a writ of mandamus must show: “ ‘(1) a clear legal right ... to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ ” Id. (quoting Ex parte Edgar, 543 So.2d 682, 684 (Ala.1989)).
“[B]ecause mandamus is a drastic remedy, and because the trial court is in a better position than this Court to rule on discovery matters, which are decided on a case-by-case analysis of facts and circumstances, we will not interfere with a trial court’s ruling on a discovery matter unless that ruling is the result of clear abuse by the trial court.”
Ex parte Union Sec. Life Ins. Co., 723 So.2d 34, 37 (Ala.1998) (citations omitted).
“Evidence of similar misrepresentations made to others by the defendant is admissible in a fraud action.” Ex parte Allstate Ins. Co., 401 So.2d 749, 751 (Ala.1981). Thus, the evidence Watson seeks to discover, applications for LifeUSA life insurance taken by Cawthon and Adkins, could lead to the discovery of relevant and admissible evidence. The trial judge did not abuse his discretion in compelling Cawthon to produce the requested documents, for two reasons. First, although Cawthon may not have dealt directly with Watson, Adkins testified in his deposition that he and Cawthon worked together to sell the policies, and Watson alleges in her complaint that Adkins and Cawthon conspired to commit the fraud and wrong committed against her. Second, neither Cawthon nor Adkins sold insurance products for LifeUSA in Alabama before 1992. Thus, it was logical, and not an abuse of the trial court’s discretion, to order Adkins, Cawthon, and LifeUSA to produce applications taken in Georgia between 1987 and 1992.
*752 The defendants cite Ex parte Union Security Life Insurance Co., 723 So.2d 34 (Ala.1998), in support of their contention that the trial court abused its discretion in ordering discovery of LifeUSA applications taken in Georgia. In Ex parte Union Security, we directed the trial court to set aside that portion of its order compelling disclosure as to the southeast United States, an area that included Alabama and six other states. We held, based on our review of the record, that there was no basis for this geographical requirement. We further held that if Union Security had engaged in the fraudulent practices alleged, then the discovery relating to Union Security’s activities in Alabama during the five-year period set out should have established that fact. We then held that requiring Union Security to produce records for the seven-state area amounted to an abuse of discretion by the trial court. In the present action, the trial court initially ordered the defendants to produce LifeUSA applications taken by agents Cawthon and Adkins between 1987 through 1992 in all states, not just Alabama. After the defendants brought the Union Security case to the court’s attention, the trial court limited the discovery of LifeUSA applications to Alabama and Georgia. Unlike the record in the Union Security case, the record in this case supported the trial court’s order. The record supports the order in this case requiring production of applications taken in Georgia between 1987 and 1992, because Cawthon was not licensed to sell insurance products for LifeUSA in Alabama until 1993 and Adkins had not been approved to sell LifeUSA insurance products in Alabama before August 1992. Thus, discovery would have disclosed few, if any, Li-feUSA applications taken by Adkins or Cawthon in Alabama before 1992, the year Watson purchased her LifeUSA policy.
The defendants cite BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), in support of their argument that the order requiring them to produce applications taken in the State of Georgia is overly broad. They argue that this Court is without power to punish their conduct in another state and that discovery of such conduct would not have any impact upon Alabama residents. In BMW v. Gore, the United States Supreme Court held that a state court cannot consider a defendant’s lawful out-of-state conduct in making an award of punitive damages, but that out-of-state conduct may be “relevant to the determination of the degree of reprehensibility of the defendant’s conduct.” Id. at 573-74, n. 21, 116 S.Ct. 1589. The plaintiff contends that she seeks the information at issue here in order to establish a claim for punitive damages and to show “the specific scheme and practice” of the defendants. Thus, contrary to the defendants’ contention, the applications taken in Georgia would not be excluded under BMW v. Gore.
The petition for the writ of mandamus is denied.
PETITION DENIED.
HOOPER, C.J., and HOUSTON, COOK, LYONS, BROWN, and JOHNSTONE, JJ., concur.
MADDOX, J., concurs in the result.