850 So.2d 246 (2002)
Ex parte SEAMAN TIMBER COMPANY, INC., et al.
(In re Melford O. Cleveland et al. v. Seaman Timber Company, Inc., et al.)
1001658.
Supreme Court of Alabama.
September 13, 2002.
Opinion on Overruling of Applications for Rehearing November 22, 2002.
*248 Thomas H. Brown, Birmingham (brief in support of application for rehearing filed by Belle H. Stoddard, Birmingham), for petitioners.
Hewitt L. Conwill of Conwill & Justice, Columbiana; and J. Frank Head of Wallace, Ellis, Fowler & Head, Columbiana, for respondents.
STUART, Justice.
Seaman Timber Company, Inc., and others, defendants in an action pending in the Shelby Circuit Court, petition for a writ of mandamus directing the Shelby Circuit Court to dismiss this action with prejudice or to grant whatever other relief this Court deems appropriate, just, and proper as a sanction for the respondents' willful refusal to comply with the trial court's discovery orders.
In 1963, Jim Seaman, Janet Seaman, and Seaman Timber Company, Inc. (hereinafter referred to collectively as "Seaman"), purchased land from members of the family of Melford O. Cleveland. The purchased property was adjacent to land owned by Melford O. Cleveland, his wife, Belle H. Cleveland (Melford and his wife are hereinafter referred to collectively as "the Clevelands"), and his aunt Sarah Head. The property was sold with the specific understanding that Seaman intended to build and to operate a lumber mill and wood-preserving operation on the property.
In April 1999, the Clevelands and Head sued Seaman, alleging that Seaman had contaminated their land, that Seaman had been doing so continuously since 1963, and that Seaman had thereby damaged their land and had caused them to suffer personal injuries. The Clevelands and Head asked for preliminary and injunctive relief, other equitable relief, and compensatory and punitive damages.
Because of the advanced ages of the plaintiffs (Melford O. Cleveland was 75 and Sarah Head was 92 when this action was filed), Seaman attempted to schedule depositions soon after it was served with the complaint. Seaman asserts that Head's deposition was of critical importance because, it argued, her testimony would refute most of Melford Cleveland's claims and would substantiate Seaman's contentions.
Head's deposition was scheduled four or more times (twice on dates selected by the Clevelands, once pursuant to a court order, and other times on dates selected by Seaman). On May 3, 1999, shortly after Seaman was served with the complaint in this case, its counsel telephoned the counsel for the Clevelands and Head (hereinafter referred to as "the Clevelands' counsel") in an effort to schedule the Clevelands' and Head's depositions to begin on May 18, 1999, or for Clevelands' counsel to provide an alternative date. The Clevelands and Head provided no alternative date for depositions, so Seaman scheduled the depositions to begin on May 18, 1999. Late in the afternoon of May 17, 1999, the Clevelands and Head canceled the depositions. Seaman's counsel requested that the Clevelands' counsel get back in touch with him in the near future to schedule the depositions "because of Ms. Head's advanced age." On May 18, Seaman also served the Clevelands and Head with Seaman's first Rule 34, Ala. R. Civ. P., request for production of documents and things. Having not heard back from the Clevelands' counsel regarding deposition dates, Seaman's counsel wrote the Clevelands' *249 counsel on May 26, 1999, suggesting that depositions begin on June 7, 1999, and requesting alternative dates if the June 7 date was inconvenient. Again, no response was received from the Clevelands and Head, so Seaman noticed the plaintiffs' depositions beginning on June 7, 1999.
By letter dated June 2, 1999, the Clevelands' cocounsel, Frank Head,[1] advised Seaman's counsel that he would be unable to attend the depositions because he was involved in a trial and that the depositions "may need to be rescheduled." Mr. Head invited defense counsel to contact him to discuss possible deposition dates. On June 3, 1999, Seaman's counsel telephoned Mr. Head and left a message for Mr. Head to the effect that he interpreted the letter as canceling the scheduled depositions and he requested that Mr. Head contact him at his earliest convenience to reschedule the depositions, stating: "I repeat that it is imperative that we get this discovery in as soon as possible, considering the advanced age of your plaintiff, Mrs. Head...." On June 8, 1999, Seaman's counsel wrote Mr. Head, confirming that the Clevelands and Head would be available the last week of July for the depositions. Seaman proposed commencing with Sarah Head's deposition on July 26 because: "[A]s we have discussed, I feel the greatest pressure to get the deposition of plaintiff Sarah Head in, because of her age." Having not heard from the Clevelands' counsel, Seaman's counsel scheduled Sarah Head's deposition for July 26 and the depositions of the Clevelands in August. On July 19, 1999, Mr. Head canceled Sarah Head's deposition. The depositions of M.O. Cleveland and Belle Cleveland, which were scheduled to begin on August 2, 1999, were also canceled.
On July 19, 1999, the trial court ordered the Clevelands and Head to comply with the Seaman's first request for production in 21 days, that is, by August 9, 1999. Seaman's counsel again corresponded with the Clevelands' counsel on July 20, 1999, requesting cooperation in scheduling Sarah Head's deposition in the very near future because of Sarah Head's advanced age. The Clevelands' counsel did not respond. On July 22, 1999, Seaman filed a motion for an order scheduling the deposition of Sarah Head.
On August 13, 1999, Seaman filed its "second" Rule 37, Ala. R. Civ. P.,[2] motion to dismiss for failure to comply with a court order and for failure to allow discovery. This motion was based on the Clevelands and Head's failure to comply with the trial court's July 19, 1999, discovery order for document production and their failure to produce any documents in the case despite repeated requests; their failure to submit to depositions despite repeated schedulings of, and attempts to schedule, depositions; their failure to respond to Seaman's requests for admission; their failure to prosecute the case; and prejudice to Seaman by the Clevelands and Head's failure to allow discovery "[B]ecause of plaintiffs' advanced ages, Seaman Timber is prejudiced every day that discovery is delayed." (Brief in Support of Seaman's Petition for Writ of Mandamus at 13.) The Clevelands and Head *250 filed nothing in opposition to the motion. Also, on August 13, 1999, the trial court set all pending motions for hearing on September 2, 1999. On September 1, 1999, Seaman served by hand delivery and filed a memorandum in support of its discovery motions and a "Notice of Filing of Additional Supporting Materials." On the first page of the memorandum, in bold type, Seaman reminded the trial court:
"It is extremely significant that one of the Plaintiffs, Sarah Head, is in her eighties or even nineties, and the lead plaintiff, Melford O. Cleveland, is in his mid-seventies. It is of the essence of defendants' ability to defend this case that timely discovery from Plaintiffs take place, before one or more of the Plaintiffs is deceased or too ill to permit discovery."
Seaman also pointed out to the trial court that, although they had retained counsel, M.O. Cleveland and Belle Cleveland were both experienced attorneys.
On September 2, 1999, the trial court conducted a hearing on Seaman's discovery motions. At that hearing, Seaman's counsel argued that if the action was not dismissed then, it certainly should be dismissed if one or more of the plaintiffs died or otherwise became incapacitated before his or her deposition could be taken. The trial court responded that it would not render an opinion on a hypothetical situation. On September 9, 1999, the trial court entered a discovery order. That order stated, in part:
"1. Plaintiffs are ordered to submit to depositions in the near future. Counsel for the parties are directed to schedule the depositions as soon as possible, and Plaintiffs are ordered to attend in accordance with that scheduling, barring an emergency."
The trial court also ordered the Clevelands and Head to produce "forthwith" the documents and things as to which it had already ordered production. The trial court further deemed conclusively established paragraphs 4 through 12 of Seaman's first requests for admissions and paragraphs 1 through 24 of Seaman's second requests for admissions.
Pursuant to that discovery order, the Clevelands and Head scheduled Sarah Head's deposition for September 27, and scheduled M.O. Cleveland's deposition beginning on October 19. On the morning of September 27, 1999, Sarah Head did not appear for deposition, and the Clevelands' counsel advised Seaman's counsel that Ms. Head would not be able to be deposed on that date because she had a fever and a possible kidney infection. The Clevelands' counsel agreed to provide Seaman's counsel with a written medical excuse for Sarah Head's absence and agreed that he would contact Seaman's counsel as soon as possible so that Sarah Head's deposition could be taken later that same week, i.e., September 28-30, 1999.
Seaman filed its third Rule 37 motion to dismiss for failure to allow discovery on September 29, 1999. The events surrounding the scheduling of Ms. Head's deposition were not included. Instead, the motion was based primarily on the Clevelands and Head's refusal to answer interrogatories that were served in July and their general refusal to submit to discovery. Again, Seaman reminded the trial court: "[B]ecause of plaintiffs' advanced ages, [Seaman] is prejudiced every day that discovery is delayed." The Clevelands and Head filed nothing in opposition to this motion, but M.O. Cleveland filed answers to the interrogatories on October 15, 1999. On October 1, 1999, the trial court ordered that it would conduct a telephone conference call, to be initiated by Seaman's counsel, on Seaman's Rule 37 motion. Despite several efforts, Seaman's *251 counsel was unable to schedule this conference call with the Clevelands' counsel.
M.O. Cleveland appeared for deposition during parts of three days in October 1999. Seaman was unsuccessful in several informal efforts between November 1999 and March 2000 to schedule the depositions of Sarah Head and Belle Cleveland and to complete M.O. Cleveland's deposition, and to obtain other discovery information from the plaintiffs.
By an order dated February 9, 2000, the trial court scheduled the case for a status conference on April 10, 2000. Sometime during the period of March 10-13, 2000, Seaman served its notices of intent to serve subpoenas on several witnesses, including the Baptist Health Center Montevallo Clinic and Dr. Karin Rock (relating to Sarah Head) and Dr. Carl Sanfelippo (relating to M.O. Cleveland). The subpoenas to Dr. Rock and the Montevallo Clinic requested, among other things: "All files, records, documents and items of any and all kinds that relate to Sarah Head...." The subpoena was served on the clinic on April 12, 2000. The clinic mailed what purported to be the subpoenaed documents to Seaman's counsel on April 19, 2000.
Because the Clevelands and Head had not responded to Seaman's informal efforts from November 1999 to March 2000 to schedule the depositions, Seaman, on March 15, 2000, served deposition notices, with document requests, for the depositions of M.O. Cleveland and Belle Cleveland, scheduling the depositions for March 28, 2000. Also, Seaman's counsel asked whether Sarah Head's health would permit her to be deposed and again confirmed his willingness to take Ms. Head's deposition at whatever venue was convenient for her.
On March 17, 2000, the Clevelands' counsel advised Seaman's counsel that M.O. Cleveland could not be available for depositions as scheduled; he offered no alternative dates. Seaman's counsel responded by asking for alternative dates, asking whether Belle Cleveland could be available on the scheduled date, and asking whether Ms. Head's health would permit her to give a deposition. The Clevelands' counsel did not respond.
On April 5, 2000, Seaman filed what it styled as a "Supplement and Update to Third Rule 37 Motion to Dismiss and For Other Appropriate Sanctions and Relief." As its title indicates, this document advised the trial court of discovery occurrences and nonoccurrences since the filing of Seaman's third motion, including Seaman's inability to obtain the deposition of Sarah Head:
"Because of her advanced age and possible health problems, [Seaman's] counsel did not wish to schedule the deposition of the third Plaintiff, Sarah Head, without assurances from Plaintiffs' counsel that Plaintiff Head is capable of giving a deposition. Accordingly, in addition to requesting dates for the completion of the depositions, hereto, [Seaman's] counsel has asked whether Plaintiff Sarah Head's health allows her to give a deposition. See Exhibit D, the March 14 and March 20, 2000, letters. None of those inquiries has been responded to.
"From early on in the litigation, because of Plaintiff, Sarah Head's advanced age, counsel for [Seaman] vigorously sought to take her deposition because of the risk that her health would deteriorate so much that she would be unable to give a deposition if it were delayed. The last time the deposition was scheduled, it was cancelled at the last minute by Plaintiffs' counsel (See footnote 4 to Defendants' Third Rule 37 Motion To Dismiss filed September 29, 1999.) [Seaman] later received from the offices of Plaintiffs' *252 counsel the faxed note attached hereto as Exhibit E. [Exhibit E is not attached to this opinion.] There has been no response from Plaintiffs' counsel to the efforts of [Seaman's] counsel to schedule the deposition of Plaintiff Sarah Head from that time to the present.
"....
"The prejudice to [Seaman] is obvious and it continues. For instance, there appears to be a very real possibility that, because of Plaintiffs' failure and refusal to produce Plaintiff, Sarah Head for a deposition, it may now be impossible for [Seaman] to obtain her deposition testimony in this case."
In addition, the supplement advised the trial court of the Clevelands' unilateral "cancellation" of the deposition of a properly subpoenaed witness, Jeff DeGraffenried. It also advised the court of the unsuccessful efforts of Seaman's counsel to schedule a conference call relating to the previous motion and the failure to complete M.O. Cleveland's deposition. The Clevelands and Head filed nothing in opposition to Seaman's supplement.
On April 10, 2000, the trial court conducted its status conference and hearing on the pending motions. The Clevelands' counsel did not advise the trial court or Seaman's counsel that Sarah Head was no longer capable of giving a deposition and that she had not been capable since the end of 1999 or the beginning of 2000. The trial court stated its intention to sanction the plaintiffs for their discovery recalcitrance, and it requested an affidavit from defense counsel to support such sanctions. Although Seaman's counsel submitted the requested affidavit, as well as a proposed discovery order, on April 21, 2000, and although the plaintiffs filed nothing in response, the trial judge never entered the order that he indicated would be entered.
In the meantime, on April 17, 2000, M.O. Cleveland visited the clinic that had provided treatment for Sarah Head, allegedly to express his appreciation for its care of Sarah Head. The clinic had last seen Ms. Head over two months earlier, on February 7, 2000.
On August 30, 2000, Seaman took the deposition of Dr. Karin Rock, Ms. Head's physician. Seaman did not learn until it took Dr. Rock's deposition and she brought with her the original clinic file that in the records the clinic had previously produced in response to Seaman's subpoenas it had not included documents showing M.O. Cleveland's instructions that Dr. Rock not advise Seaman's counsel whether Sarah Head could give a deposition on September 27, 1999, and that Dr. Rock not advise Seaman's counsel whether Ms. Head could give a deposition in the future. Additionally, Seaman learned for the first time from Dr. Rock's deposition and the medical file that Ms. Head's condition on September 27 was not a medical emergency and that she could have given a deposition on that date. In fact, on September 27, Ms. Head was diagnosed with a yeast infection and a rash.
According to Dr. Rock, Ms. Head's visit to her clinic on September 27, 1999 (the date previously selected by the Clevelands and Head and their counsel for Ms. Head's deposition), was not a medical emergency and Ms. Head could have given a deposition on that date. Also, according to Dr. Rock, Ms. Head was mentally and physically capable of giving a deposition on other dates for which her deposition had been scheduled and through the end of 1999. With respect to the scheduling of Ms. Head's deposition for July 26, 1999 (a date provided by the Clevelands and Ms. Head), Dr. Rock testified that Ms. Head was mentally capable of giving a deposition on that date, but that she was in some physical *253 discomfort. Dr. Rock further testified that the deposition could have been taken in such a manner as to accommodate Ms. Head's physical discomfort.
Dr. Rock's deposition testimony also revealed that Sarah Head was mentally and physically capable of giving a deposition up until the end of 1999. However, in Dr. Rock's opinion, by the end of 1999 or early 2000, Ms. Head's condition had deteriorated to the point that she could no longer give a deposition. Ms. Head later died.[3]
In order to ensure that Seaman had finally obtained the complete medical file on Sarah Head and in order to authenticate that file, Seaman took the deposition of the clinic's custodian of records on September 21, 2000.
Seaman filed its fifth motion to dismiss on December 21, 2000. The Clevelands filed nothing in response. The trial court conducted a hearing on the motion on March 19, 2001; it denied the motion on May 9, 2001. The order denying the motion was issued by the clerk on May 16, 2001. It provided:
"This matter coming before the Court on March 19, 2001 for hearing on pending Motions to Dismiss and after hearing same, the Motion to dismiss is granted in part and denied in part. Claims for personal injury/pain and suffering are stricken. The Plaintiffs have seven (7) days to strike claims for personal injury/pain and suffering or the Court will dismiss those portions of the Plaintiffs' complaint. Further, the Plaintiffs are to assist Defendant in assuring that witness, DeGraffenreid is deposed within the next thirty (30) days. As to request of Defendant to generally dismiss the Plaintiffs' complaint is denied.
 "/s/ Dan Reeves
 "Dan Reeves"
The trial court signed its Rule 54(b), Ala. R. Civ. P., certification of the order striking the Clevelands' personal-injury claims on May 24, 2001. The trial court also entered a general scheduling order. On June 5, 2001, Seaman filed a conditional motion to amend its first amended answer in the case, and it requested the trial court to rescind or abate the scheduling order because it intended to file this petition for a writ of mandamus.

Other Discovery Issues
While Seaman's primary complaint is its inability to depose the now deceased Ms. Head, other problems securing discovery form the background for its demand for relief from the trial court.

a. Document Requests to Plaintiffs

With most of its deposition notices, Seaman also served requests for documents. In addition to the document requests filed with its deposition notices, Seaman served several "stand alone" document requests. Seaman's counsel was unsuccessful in informal efforts to obtain document production from the Clevelands and Head, so Seaman filed a motion to compel production. The Clevelands and Head filed nothing in opposition. The trial court granted this motion on July 19, 1999, and the Clevelands and Head were ordered to comply with the request for production within 21 days of the order, that is, by August 9, 1999.
The Clevelands and Head did not comply with this court order; they did not produce any documents despite Seaman's reminder that the court-ordered production was overdue. The Clevelands and Head did not respond until after Seaman had filed its discovery motion on August 13, 1999.
*254 As already noted, Seaman's Rule 37 motion to dismiss for failure to comply with the court's order was filed by Seaman on August 13, 1999, and heard by the trial court on September 2, 1999. After that hearing, and as part of the court's September 9, 1999, discovery order, the Clevelands were again ordered to produce documents.
Documents were finally produced by M.O. Cleveland after the September 2, 1999, court hearing and also late on the day before his deposition in October 1999. M.O. Cleveland provided documents after Seaman filed several discovery motions and the trial court issued two discovery orders. Belle Cleveland and Sarah Head never produced any documents.
On July 3, 2000, Seaman filed its fourth Rule 37 motion to dismiss. This motion was based primarily on the Clevelands and Head's failure to answer Seaman's second interrogatories or to respond to Seaman's second document requests, as well as the Clevelands and Head's general refusal to submit to discovery. In the motion Seaman reminded the trial judge that no order had been entered after the April 10, 2000, hearing on its earlier discovery motions. Seaman specifically requested dismissal of the entire action pursuant to the Iverson v. Xpert Tune, Inc., 553 So.2d 82 (Ala.1989), spoliation doctrine regarding destruction or nonpreservation of evidence. No ruling or hearing on this motion occurred in the year 2000.

b. Requests for Admissions to the Plaintiffs

Early in this litigation, Seaman served two sets of requests for admissions on the Clevelands and Head, seeking to authenticate various written statements Seaman had previously received from the Clevelands, Sarah Head, and other members of their family. The Clevelands and Head did not respond to the requests, and, as part of its September 9, 1999, discovery order, the court deemed conclusively established paragraphs 4 through 12 of Seaman's first requests for admissions and paragraphs 1 through 24 of Seaman's second request for admissions.
Seaman also served the Clevelands with its third requests for admissions, second interrogatories, and second request for production of documents. The Clevelands and Head responded to this with a "statement" that seemed to deny the requests for admissions, but that contained no responses to the follow-up interrogatories or the requests for documents. Informal efforts by Seaman's counsel to obtain responses were unsuccessful, and Seaman filed its fourth Rule 37 motion to dismiss for failure to allow discovery. That motion was based primarily on the Clevelands and Head's failure to answer the second interrogatories or to respond to the second document request. The Clevelands and Head filed nothing in opposition to this motion. No ruling or hearing on this motion occurred in the year 2000.

c. Interrogatories to the Plaintiffs

On July 14, 1999, Seaman served their first interrogatories on the Clevelands and Head. Those interrogatories consisted of four interrogatories. Complete responses to those interrogatories were never received from the Clevelands, and no responses were ever received from Sarah Head. The failure of the Clevelands and Head to answer the interrogatories was, in part, the subject of Seaman's third motion to dismiss filed on September 29, 1999, to which the Clevelands and Head filed no opposition and as to which the trial court made no ruling in the year 2000. The Clevelands and Head never answered Seaman's second interrogatories.
On April 17, 2000, the Clevelands' counsel advised Seaman's counsel that Sarah *255 Head was not capable of signing interrogatories at that time but that he would telephone Seaman's counsel to update him "on this matter." No such telephone call occurred.

d. Discovery Requests to Third Parties

In addition to the subpoenas and deposition discovery to obtain medical information relating to Sarah Head, Seaman also served a notice of intent to issue a subpoena for the production of records on Dr. Sanfelippo, one of M.O. Cleveland's treating physicians. In response to this, the Clevelands filed a motion to quash the subpoena on April 27, 2000. They argued that the subpoena constituted harassment and that it sought irrelevant and immaterial information. Seaman responded on May 2, 2000, by pointing out that the complaint filed by the Clevelands and Head was replete with personal-injury claims and that Seaman was entitled to obtain the Clevelands' and Head's medical records unless the personal-injury claims were stricken from the case. Seaman agreed to maintain confidentiality relating to the records. No hearing or ruling on the plaintiffs' motion and Seaman's response occurred in the year 2000, but, at a hearing held on March 19, 2001, the trial court indicated that, if the plaintiffs did not strike their claims for personal injury, he would dismiss them. Accordingly, as part of the order dated May 9, 2001, the trial court ordered the Clevelands either to strike the claims for personal injury or the court would dismiss them. The personal-injury claims were dismissed with prejudice by the trial court in its order signed May 24, 2001.
Seaman also served a notice to take the deposition of Jeff DeGraffenried, a witness identified by M.O. Cleveland as having taken photographs and samples on the property owned by the Clevelands and Head. Seaman's counsel served Mr. DeGraffenried with a subpoena requiring his attendance. When Mr. DeGraffenried did not appear for his deposition as subpoenaed, he advised Seaman's counsel that the Clevelands' counsel had advised him that the deposition had been canceled and that he need not appear. The deposition had been scheduled by Seaman's counsel and Mr. DeGraffenried had been subpoenaed by Seaman's counsel; the deposition had not been canceled.
The information surrounding this unilateral "cancellation" of the deposition of a properly subpoenaed witness, Jeff DeGraffenried, by the Clevelands' counsel was part of the supplement to the third Rule 37 motion to dismiss. The Clevelands filed nothing in response to Seaman's supplement.
The court conducted a hearing on Seaman's third Rule 37 motion to dismiss on April 10, 2000. Among other things, the trial court indicated that it would enter an order sanctioning the Clevelands and Head, and requested an affidavit from Seaman's counsel. Although Seaman's counsel submitted the affidavit and a proposed order and the Clevelands filed nothing in response or opposition, the trial court issued no order during the year 2000.
As part of its order signed over a year later, on May 9, 2001, the trial court ordered that the deposition of Jeff DeGraffenried be taken within 30 days. However, Seaman moved to rescind or abate this portion of the order pending resolution of this petition for the writ of mandamus.

Analysis
The standard for this Court's issuance of a writ of mandamus is often repeated: "there must be (1) a clear legal right on the part of the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of *256 another adequate remedy; and (4) properly invoked jurisdiction of the Court." Ex parte Consolidated Publ'g Co., 601 So.2d 423, 426 (Ala.1992). Mandamus lies to compel the exercise of discretion by a trial court, but lies to compel the exercise of that discretion in a particular manner only when there has been an abuse of discretion. Ex parte ReLife, Inc., 679 So.2d 664 (Ala.1996).
Mandamus is the proper means to obtain review of whether the trial court has abused its discretion in ordering discovery, in resolving discovery matters, and in issuing discovery orders. See, e.g., Ex parte Union Sec. Life Ins., 723 So.2d 34, 37 (Ala.1998); Ex parte Horton, 711 So.2d 979 (Ala.1998). The standard for issuance of the writ in a discovery case is whether there has been a clear showing that the trial court abused its discretion, Ex parte Compass Bank, 686 So.2d 1135 (Ala.1996).
Seaman cites a number of cases in which this Court has affirmed the dismissal of an action for misconduct during discovery: Napier v. McDougal, 601 So.2d 446 (Ala. 1992) (affirmance of a dismissal with prejudice for failure to respond to discovery requests); Neal v. AT & T, 454 So.2d 975 (Ala.1984) (affirmance of a dismissal for failure to comply with court order); and Blair v. Cooper, 437 So.2d 1249 (Ala.1983) (affirmance of a dismissal with prejudice for failure to appear for a deposition).
The decisions of this Court addressing discovery and the spoliation of evidence make clear that the ultimate sanction of dismissal (or a default judgment) is the appropriate sanction where the complained-of conduct is willful, especially where the party seeking the discovery is prejudiced by the refusal to comply with discovery orders.
In Napier v. McDougal, supra, this Court quoted with approval from Iverson v. Xpert Tune, Inc., supra:
"`"[W]illfulness" on the part of the noncomplying party is a key factor supporting a dismissal. If one party acted with willful disregard of reasonable and necessary requests for the efficient administration of justice, the application of even so stringent a sanction as dismissal is justified and should not be disturbed.'"
601 So.2d at 447-48 (emphasis omitted). This Court went on to hold that there was credible evidence from which the trial court could find that Napier's misconduct in failing to answer interrogatories even after a court order "was sufficiently willful to justify the imposition of the severe sanction of a dismissal with prejudice...."
Similarly, in Neal v. AT & T, 454 So.2d at 977, this Court noted that a dismissal was appropriate where, "a party intentionally or willfully fail[s] to attend a deposition," and that the evidence indicated that Neal's failure to attend his deposition was willful, in violation of a court order. Likewise, in Blair v. Cooper, 437 So.2d at 1252, this Court held that dismissal and striking of the plaintiffs' complaint was a proper sanction based on the plaintiffs' failure to appear at their rescheduled depositions, because the plaintiffs' conduct indicated willfulness and bad faith.
In Bowman v. May, 678 So.2d 1135, 1136 (Ala.Civ.App.1996), the Court of Civil Appeals noted that Bowman was "less than diligent in responding to discovery requests, and that he [had] not offered an explanation for his failure to comply, other than to say he is serving in the military." The Court of Civil Appeals held that a dismissal was proper based both on the plaintiff's failure to comply with discovery and on his failure to prosecute.
*257 Likewise, in Iverson, 553 So.2d at 87, this Court noted that "`willfulness' on the part of the noncomplying party is a key factor supporting a dismissal" and that Iverson's failure to preserve an item of evidence was, according to the trial court, gross negligence, and his explanation for his failure to preserve indicated willful misconduct. This Court affirmed, citing willfulness, and also noted that Iverson's efforts constituted willful or bad-faith spoliation of the evidence, requiring dismissal. Id. at 87 and 89.
In contrast to Seaman's lengthy recitation of the Clevelands' discovery abuses, the Clevelands' response is short and to the point. Essentially, they dispute that they willfully and intentionally prevented Ms. Head's deposition from being taken. They assert that on the date of the last scheduled deposition of Ms. Head, Ms. Head's physical condition "was perceived to be a serious health matter, but ... turned out to be, upon examination, not as serious as feared." As to the legal matters presented, they argue that Seaman does not have a clear legal right to the order sought. Ex parte LifeUSA Ins. Co., 776 So.2d 749 (Ala.2000); Ex parte Palmer, 556 So.2d 390 (Ala.Civ.App.1989). They also maintain that the trial court did not abuse its discretion in failing to dismiss this case because of noncompliance with a discovery order because there was no imperative duty for the court to dismiss this case based on the facts. Ex parte Rogers, 533 So.2d 245 (Ala.1988); Ex parte Old Mountain Props., 415 So.2d 1048 (Ala. 1982).
"Discovery matters are within the trial court's sound discretion, and its ruling on those matters will not be reversed absent a showing of abuse of discretion and substantial harm to the appellant." Wolff v. Colonial Bank, 612 So.2d 1146, 1146 (Ala.1993), citing Smith v. Wilcox County Bd. of Educ., 365 So.2d 659 (Ala.1978); Selby v. Money, 403 So.2d 218 (Ala.1981); Riddlesprigger v. Ervin, 519 So.2d 486, 487 (Ala.1987); Iverson v. Xpert Tune, Inc.; Ragan v. Blazon Flexible Flyer, Inc., 590 So.2d 882 (Ala.1991); and Napier v. McDougal. The sanction sought by Seaman for the Clevelands' refusal to allow discovery, in particular, their preventing Seaman from deposing Sarah Head until she was unable to give a deposition and subsequently died, was an outright dismissal of the entire action. The trial court, in this case, exercised its discretion and imposed a lesser sanction, dismissal of the personal-injury claims of the Clevelands and Head.
We must determine whether the trial judge abused his discretion by refusing to grant Seaman's request for dismissal of this action, granting instead dismissal of only the personal-injury claims. We note first that dismissal of the personal-injury claims tends to indicate that the trial court found the Clevelands' conduct to be willful. However, it imposed only a limited sanction. We find the discovery sanction imposeddismissal of the personal-injury claimsto be wholly inadequate. The Clevelands' intentional obstruction of the taking of the deposition of Ms. Head prevented Seaman from obtaining evidence relevant to the entirety of the claims, specifically the liability issue, not just the personal-injury claims. Further, the damages based on the personal-injury claims are only a very small portion of the damages claimed in this action. The bulk of the damages claimed are damages to real property. The discovery sanction imposed must be proportional to, and compensatory of, the discovery abuse committed.
Because the discovery sanction imposed is wholly inadequate, we grant the petition and issue the writ of mandamus.
*258 The sanctions available under Rule 37, Ala. R. Civ. P., include:
"(2) Sanctions by Court in Which Action Is Pending. If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
"(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
"(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
"(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
"(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;
"(E) Where a party has failed to comply with an order under Rule 35(a) requiring that party to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this subdivision, unless the party failing to comply shows that party is unable to produce such person for examination.
"In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."
As we have noted, the trial court in a discovery-abuse case must impose a sanction proportionate to and compensatory of the particular discovery abuse committed. Outright dismissal of the action is appropriate where the refusal to allow discovery is willful. A lesser sanction is appropriate where the conduct is not willful or the party accused of not complying with discovery was acting in good faith.
This case involves not merely a refusal to allow discovery, but also the willful obstruction of Seaman's efforts to depose Head until she was incompetent to testify in deposition; such action is akin to the spoliation of crucial evidence. Although the evidence here is different from that in the typical spoliation case, which involves the destruction of physical evidence (such as a wrecked car in a products-liability action), this is a serious case indeed. Ms. Head is dead. Her testimony can no longer be preserved for trialit is gone forever.
We grant the petition for the writ of mandamus and direct the trial court to reconsider Seaman's motion for dismissal or for sanctions for failure to allow discovery, and we direct the trial court to impose an adequate sanction, proportionate to the discovery abuse in this case.
PETITION GRANTED; WRIT ISSUED.
*259 HOUSTON, SEE, BROWN, JOHNSTONE, and HARWOOD, JJ., concur.
LYONS, J., concurs specially.
MOORE, C.J., dissents.
WOODALL, J., recuses himself.
LYONS, Justice (concurring specially).
I share the views expressed in the main opinion as to the inadequacy of the sanctions imposed by the trial court. On remand, the trial court has available to it a range of sanctions, including dismissal of the entire action (Rule 37(b)(2)(C), Ala. R. Civ. P.) or taking as true all of the evidence that Seaman expected to prove had it been able to depose the now deceased Ms. Head (Rule 37(b)(2)(A)).

On Applications for Rehearing
STUART, Justice.
On September 13, 2002, we issued an opinion granting the petition for the writ of mandamus filed by Seaman Timber Company, Inc., Jim Seaman, and Janet Seaman (hereinafter referred to collectively as "Seaman"). We directed the trial court to reconsider Seaman's motion for dismissal or for sanctions against Melford O. Cleveland and Belle Cleveland for failure to allow discovery.
In her application for rehearing, Belle Cleveland asserts that she and Melford O. Cleveland separated in May 1999, shortly after they filed the underlying action against Seaman on April 14, 1999. Seaman filed its petition for a writ of mandamus on June 18, 2001. While this action was pending, the Clevelands divorced. The final judgment of divorce issued on November 28, 2001, states, "[Melford O. Cleveland] is awarded all right, title and interest in and to the claim against Seaman Timber Company regarding the Shelby County farm property, and [Belle Cleveland] is hereby divested with any interest therein."
Belle Cleveland maintains that because of the pendency of the divorce proceedings her contact with the attorneys in this action was minimal and that she complied with those discovery requests that were presented to her. In her application for rehearing, she requests that this Court remove her as a plaintiff. Seaman has expressed no objection to this request. Because this Court has before it only Seaman's petition for a writ of mandamus, we are reluctant to remove a party. We, however, encourage the trial court, when it reconsiders Seaman's motion for dismissal and the imposition of sanctions, to consider this new information regarding Belle Cleveland and her participation in the proceedings below.
APPLICATIONS OVERRULED.
MOORE, C.J., and HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, and HARWOOD, JJ., concur.
WOODALL, J., recuses himself.
NOTES
[1] The materials submitted with this petition indicate that Frank Head and Sarah Head were related, although the nature of that relationship is not indicated.
[2] Seaman refers to this Rule 37, Ala. R. Civ. P., motion as its "second" Rule 37 motion. Apparently, it filed an earlier Rule 37 motion, although it does not refer to that earlier motion in its petition and supporting brief. In this opinion, we will refer to Seaman's Rule 37 motions as it refers to them in its brief.
[3] The materials submitted with this petition do not indicate the date of Ms. Head's death.