This is an appeal from the trial court's dismissal for refusal to provide discovery, pursuant to Rule 37, A.R.Civ.P. We affirm.
Walter Iverson sued Xpert Tune, Inc. ("Xpert"), alleging breach of contract, fraud, and misrepresentation. The substance of these claims was that Xpert had diagnosed Iverson's automobile as having a defective fuel pump and had subsequently replaced the pump, when, in fact, he alleges, the fuel pump was "in good working order."
Xpert filed with the trial court, and served upon Iverson's counsel, a request for production and/or inspection of documents, specifically requesting to inspect "[t]he fuel pump which [Xpert] removed from [Iverson's] vehicle on or about July 17, 1987." Iverson and Xpert agreed to schedule the inspection of the fuel pump on or prior to September 7, 1988, at the time set for Iverson to depose Xpert's expert witness. The day preceding the scheduled deposition of Xpert's expert witness, Iverson informed Xpert that the fuel pump was unavailable for inspection as requested.
On September 8, 1988, Xpert filed a motion to dismiss pursuant to Rule 37, A.R.Civ.P., offering the following statement as grounds in support thereof:
 "4. [D]ue to [Iverson's] own actions in direct contradiction with [Xpert's] outstanding request to inspect the subject fuel pump, [Xpert has] been denied the opportunity to inspect and/or examine the most crucial piece of evidence in this case. [Xpert] submit[s] that to force [it] to trial to defend [Iverson's] claims without first having the benefit, as did [Iverson's] expert witness, to inspect and/or examine the subject fuel pump, would result in extreme and undue prejudice to [Xpert], and handicap [Xpert] from effectively cross-examining [Iverson's] expert witness and rebutting [Iverson's] claim that the fuel pump was not defective. Though [counsel for Xpert] has no knowledge concerning whether counsel for [Iverson] actually informed his client that [Xpert] had an outstanding request to inspect the subject fuel pump, the law clearly places a duty upon [Iverson] and/or his counsel to preserve the requested evidence and guard against its destruction or disposal. [Iverson] has clearly breached this duty and, thereby, severely prejudiced [Xpert] in [its] defense to [Iverson's] claims."
Subsequently, the trial court held a hearing on Xpert's motion to dismiss for the purpose of determining the circumstances surrounding the discarding of the fuel pump, which was critical to this case. At this hearing, the trial court heard Iverson's testimony and also considered the testimony of Xpert's expert witness submitted by affidavit, filed with the trial court's permission. The trial court granted Xpert's motion to dismiss and entered a default judgment against Iverson pursuant to Rule 37(b)(2)(c), A.R.Civ.P., based on Iverson's willful failure to permit discovery. This appeal followed.
In its memorandum opinion, the trial court made the following findings of fact:
 "Iverson took his automobile to Xpert for repair and maintenance. Xpert undertook repairs which included replacing the fuel pump; however, the repairs were unsuccessful. Iverson has sued Xpert for, among other things, fraud and claims that Xpert falsely represented that the fuel pump on his car was defective, and in reliance on the false representation Iverson allowed Xpert to replace the fuel pump and make other repairs on about July 17, 1987. When Xpert was unable to repair the car, Iverson reclaimed the old fuel pump and in December, 1987, he took his car to another mechanic who reinstalled the old fuel pump. Iverson contends that the old fuel pump performed satisfactorily after it was reinstalled. Iverson further testified that he discarded the new fuel pump which was installed by Xpert.
 "Iverson filed suit on December 30, 1987. On March 27, 1988, Xpert filed interrogatories and a request for production of, among other things, the fuel pump. Counsel for Iverson mailed the interrogatories and motion for production *Page 85 to Iverson on March 28, 1988. Xpert took Iverson's deposition on April 28, 1988, and as of the time of the deposition Xpert was aware that Iverson was living in Illinois and that the old fuel pump had been reinstalled on Iverson's car. Xpert filed no motion for Iverson to preserve the fuel pump, and Iverson's counsel represents that he inadvertently neglected to tell Iverson to preserve the fuel pump. However, Iverson knew that he should preserve the fuel pump.
 "Counsel for the parties apparently agreed that the fuel pump need not be produced for inspection until the taking of Kerry Reagan's deposition. Mr. Reagan is a mechanic who would testify as an expert witness on behalf of Xpert. In an affidavit filed with the Court, Mr. Reagan testified that he was '[A]sked . . . to consult with [Xpert's counsel] and give them an opinion regarding whether a fuel pump which is the subject of this lawsuit was actually leaking.' In addition, Reagan testified 'Had [he] been able to inspect the fuel pump, [he] would have been able to express an opinion as to its present condition, whether it was leaking and very possibly about the history of the fuel pump and whether it had been leaking in the past.'
 "Mr. Reagan's deposition was set for September 7, 1988. On September 6, 1988, Iverson's counsel informed Xpert's counsel that the fuel pump was unavailable for inspection. Xpert immediately moved that this suit be dismissed pursuant to Rule 37, A.R.Civ.P.
 "A hearing was held to determine the circumstances under which the old fuel pump was removed and discarded, and to determine an appropriate sanction. 8 Wright Miller, Federal Practice and Procedure: Civil § 2284 n. 71.1 (Supp. 1987). At this hearing Walter Iverson testified, and the Court received exhibits, legal memoranda from counsel and arguments.
 "Iverson testified that because his car did not meet Illinois auto emission requirements, he took the automobile to a long-standing friend (Ed Carter) to have the electronic distributor replaced with a regular distributor. This occurred during the last week of August, 1988, and Carter replaced the distributor and told Iverson that if he was planning to go out of town to call him. Although Carter usually does not charge Iverson for any work he does, Iverson paid him $50.00. Iverson's attorney called and told him to come to Alabama for Reagan's deposition and bring the car. On August 30, 1988, Iverson called Carter to tell him he was going out of town, and Carter, at the end of the conversation said 'I forgot to tell you, I changed your fuel pump,' because the diaphragm was weak. Although Carter and Iverson had been friends for many years, he and Carter never discussed the pending litigation or the need to preserve the fuel pump although Iverson testified that he knew that he needed to preserve the fuel pump.
 "Iverson reported this turn of events to his counsel, who, apparently, told him to retrieve the pump. Iverson called Carter back but Carter told him that he had taken the pump to the auto parts house where he purchased the new fuel pump. According to Iverson, it is the procedure in Illinois that if you get a new pump from a parts house you must leave a deposit, and when you bring in the old fuel pump your deposit is returned. Iverson could not explain why a person could not simply purchase a new fuel pump other than to say it is the procedure in Illinois. Finally, Iverson testified that he never made any effort to determine the name and location of the parts house to which the fuel pump was returned, and he never made any other effort to retrieve the fuel pump.
 "The Court does not accept Mr. Iverson's version of the reasons for and the manner in which the fuel pump was removed and discarded. First, in the normal course of human affairs, Iverson and Carter would have discussed the nature of the needed repairs before the work was done. Iverson never suggested to Carter that the car was not operating properly and on the record before this *Page 86 Court, there is nothing to suggest that the fuel pump required examination. Under these circumstances, the Court finds Iverson's testimony not credible concerning Carter's last minute disclosure that he replaced the fuel pump. Second, Carter must have incurred costs in buying the new fuel pump and distributor but, apparently, Carter and Iverson never discussed repayment of these expenses. If Iverson's testimony is to be believed, this is the first time he ever paid Carter for any work Carter has done for him, and the money he paid Carter was not reimbursement of expenses. The Court accepts the fact that a friend may provide free labor, but the Court finds it hard to believe that Carter also provided free parts. Third, the Court does not accept Iverson's explanation of why Carter could not purchase a new fuel pump. It is more reasonable to believe that Carter sold the used pump to the parts house and this, in and of itself, is insignificant. However, what is significant is that Iverson appears to be willing to manufacture an explanation for Carter's actions rather than attempting to determine why Carter disposed of the pump in the manner he did, and this bears directly on Iverson's credibility. Finally, Iverson offered no explanation as to why he failed to make any effort to retrieve the evidence which is the center of this controversy.
 "Dismissal of the suit for failure to provide discovery is a drastic remedy, and before this Court can consider dismissal, it must find that Iverson was in some manner at fault for failure to provide discovery. Societe Internationale v. Rogers, 357 U.S. 197 [78 S.Ct. 1087, 2 L.Ed.2d 1255] (1958). It is not necessary that the Court find that Iverson willfully failed to provide discovery, but willfulness is a key consideration, among others. Weatherly v. Baptist Medical Center, 392 So.2d 832, 835 (Ala. 1981). Also, if Iverson's conduct amounts to gross negligence, the Court may consider this a valid reason for dismissal. cf., Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062 (2d Cir. 1979) (an attorney's gross negligence amounting to a total dereliction of professional responsibility, but not a conscious disregard of court orders, is properly embraced within the fault concept of Societe Internationale's triple [criteria]). 'The sanction of dismissal, where properly employed, is justified on the theory the party's refusal to reveal material evidence tacitly admits his claim or defense is without merit.' Puritan Ins. Co. v. Superior Court, 217 Cal.Rptr. 602, 607, 172 [171] Cal.App.3d 877, 885 (Cal.Ct.App. 1985).
 "This case falls within the rationale for dismissing an action for refusal to provide discovery. This is not a case of mere negligent loss of the fuel pump. Iverson's actions on their face, particularly his failure to attempt to retrieve the fuel pump, amount to gross negligence; and when Iverson's actions are coupled with his explanation, the Court concludes that Iverson willfully discarded the fuel pump to avoid production.
 "Based on the foregoing, this suit will be dismissed and an appropriate judgment will be entered.
 "DONE and ORDERED in chambers this 9th day of November, 1988." (Emphasis added.)
The issues for our review are whether the trial court correctly applied the law to the facts in the case, and, if the trial court did in fact apply the correct law, whether the trial court abused its discretion in dismissing the case.
Iverson contends that the trial court's finding that he willfully discarded the fuel pump is not supported by the evidence. Where the trial court has heard and consideredore tenus testimony, we will presume that its findings of fact are correct, unless we find that they are plainly and palpably erroneous after considering all inferences that can logically be drawn from the evidence. McCrary v. Butler, 540 So.2d 736
(Ala. 1989).
From our review of the record, we find credible evidence from which the trial *Page 87 
court found that Iverson was guilty of willful conduct — that Iverson, through his actions, failed to exercise any precaution to safeguard the fuel pump and to protect it from being destroyed or discarded; that he failed to make any effort to determine the whereabouts of the fuel pump following its removal from his vehicle; and that due to Iverson's own actions, crucial evidence in this case no longer existed and its disposal, destruction, or suppression occurred subsequent to Xpert's request to inspect the fuel pump but prior to the scheduled inspection. The trial court's findings of fact were not plainly and palpably erroneous.
Iverson also contends that the trial court abused its discretion by imposing the sanction of dismissal absent a motion to compel production.
The trial court is vested with broad and considerable discretion in controlling the discovery process and in making rulings on all matters pertaining to discovery, including the authority to make such rulings as are necessary to protect the integrity of the discovery process. See Ex parte SargentIndustries, Inc., 466 So.2d 961 (Ala. 1985); Ex parte McClartyConst. Equipment Co., 428 So.2d 629 (Ala. 1983); Hancock v.City of Montgomery, 428 So.2d 29 (Ala. 1983); Ex parte AllstateIns. Co., 401 So.2d 749 (Ala. 1981); Ex parte Old MountainProperties, Inc., 415 So.2d 1048 (Ala. 1982), cert. denied, OldMountain Properties, Ltd. v. April Investments, Inc.,459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982). Furthermore, deeply rooted in the common law is the court's power to manage its affairs in order to achieve the orderly and expeditious disposition of cases, including the authority to impose reasonable and appropriate sanctions for failure to comply with discovery. See Carlucci v. Piper Aircraft Corp., 775 F.2d 1440
(11th Cir. 1985); Flaksa v. Little River Marine ConstructionCo., 389 F.2d 885 (5th Cir.), cert. denied, 392 U.S. 928,88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968); Link v. Wabash R.R.,370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).[1]
The choice of discovery sanctions is within the trial court's discretion and will not be disturbed on appeal absent gross abuse of discretion, Johnson v. Langley, 495 So.2d 1061 (Ala. 1986); Deaton, Inc. v. Burroughs, 456 So.2d 771 (Ala. 1984);Weatherly v. Baptist Medical Center, 392 So.2d 832 (Ala. 1981), and then only upon a showing that such abuse of discretion resulted in substantial harm to appellant. Edward Leasing Corp.v. Uhlig Associates, Inc., 785 F.2d 877 (11th Cir. 1986).
We recognize that the sanction of dismissal is the most severe sanction that a court may apply. See UltracashmereHouse, Ltd. v. Meyer, 407 So.2d 125 (Ala. 1981); Holt v. DavidG. Steven, Inc., 416 So.2d 1071 (Ala.Civ.App. 1982). Judicial discretion must be carefully exercised to assure that the situation warrants the imposition of such a sanction. Weatherlyv. Baptist Medical Center, supra; Durham v. Florida East CoastRy., 385 F.2d 366 (5th Cir. 1977); Brown v. Thompson,430 F.2d 1214 (5th Cir. 1970). Dismissal orders must be carefully scrutinized, and the plaintiff's conduct must mandate dismissal. Smith v. Wilcox County Board of Education,365 So.2d 659 (Ala. 1978). We have held that "willfulness" on the part of the noncomplying party is a key factor supporting a dismissal. See Weatherly v. Baptist Medical Center, supra; see alsoNational Hockey League v. Metropolitan Hockey Club, Inc.,427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); SocieteInternationale Pour Participations Industrielles etCommerciales, S.A. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087,2 L.Ed.2d 1255 (1958). If one party has acted with willful and deliberate disregard of reasonable and necessary requests for the efficient administration of justice, the application of even so stringent a sanction as dismissal is fully justified and should not be disturbed. See Trans World *Page 88 Airlines, Inc. v. Hughes, 332 F.2d 602 (2d Cir. 1964), cert. dismissed, 380 U.S. 248, 85 S.Ct. 934, 13 L.Ed.2d 817 (1965); 1 Lyons, Alabama Practice (1973) (Author's Comments to Rule 37); see also Cine Forty-Second St. Theatre Corp. v. Allied ArtistsPictures Corp., 602 F.2d 1062 (2d Cir. 1979).
Rule 37, A.R.Civ.P., provides the method for dealing with a party's failure to comply with discovery. That rule provides in pertinent part as follows:
 "(d) Failure of party to . . . respond to request for inspection. If a party . . . fails . . . (3) to serve a written response to a request for production or inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under Paragraph (A), (B), and (C) of subdivision (b)(2) of this rule." (Emphasis supplied.)
Generally, a motion to compel under Rule 37(a), A.R.Civ.P., must first be obtained before sanctions under Rule 37(b), A.R.Civ.P., may be imposed. See Dutton v. Dutton, 446 So.2d 615
(Ala.Civ.App. 1983); Schleper v. Ford Motor Co., Auto Div.,585 F.2d 1367 (8th Cir. 1978). However, no court order is required in order to bring Rule 37(d) into play. See alsoSchleper v. Ford Motor Co., Auto Div., supra, n. 3 at 1371. See 8 Wright and Miller, Federal Practice and Procedure, § 2291 et seq. (1970); see also Cardox Corp. v. Olin Mathieson ChemicalCorp., 23 F.R.D. 27 (S.D. 111. 1958). It is enough that a request for inspection has been properly served on the party.Robison v. Transamerica Ins. Co., 368 F.2d 37 (10th Cir. 1966), citing Barron Holtzoff, Federal Practice and Procedure
(Wright ed. 1961); Wembley, Inc. v. Diplomat Tie Co.,216 F. Supp. 565, 573 n. 4 (D.Md. 1963), citing Barron Holtzoff,Federal Practice and Procedure (Wright ed. 1961). The comments to Rule 37 specifically state that "Rule 37(d) provides remedies for complete failure to respond or object to discovery for which compliance is expected without court order unless objected to." Although the committee comments are not binding, they may be highly persuasive. See Thomas v. Liberty NationalLife Ins. Co., 368 So.2d 254 (Ala. 1979).
Once a party has been served with a request for production or inspection, absent any objection thereto, that party must cooperate in good faith to reasonably protect the requested evidence from being destroyed or discarded. See CineForty-Second St. Theatre Corp., supra. Otherwise, a party could foreclose compliance with the request by merely allowing or causing that evidence to be destroyed or discarded.
 " '[I]f parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules.' "
See Cine Forty-Second St. Theatre Corp., 602 F.2d at 1068. Accordingly, Rule 37(d) is a proper vehicle through which the court may, without order or the need of a motion to compel, and absent a gross abuse of discretion, deal with the deliberate act of a party disregarding his duties and obligations to respond to discovery requests.
To require Xpert to file a motion to compel would be a futile act in the instant case. The undisputed facts reveal that, although Iverson never objected to the inspection of the fuel pump, he nevertheless failed to respond to the request for production. Furthermore, the trial court concluded that Iverson willfully destroyed or discarded the fuel pump. It is well established that the law does not require the doing of a futile act. Kelley v. Dupree, 376 So.2d 1371 (Ala. 1979).
Furthermore, we have held:
 "There is no principle better settled than that the spoliation or an attempt to suppress material evidence by a party to a suit, favorable to an adversary, is a sufficient foundation for an inference that the claim of such party is unjust or fraudulent." *Page 89 
Southern Homes Insurance Co. of the Carolinas v. Boatwright,231 Ala. 198, 204, 164 So. 102 (1935); see also Baltic CottonCo. v. United States, 50 F.2d 257 (S.D.Ala.), aff'd,55 F.2d 568 (5th Cir. 1931). While we are not to be understood as specifically holding that Iverson is guilty of intentionally or deliberately destroying evidence, nonetheless, following the reasoning in Southern Homes Insurance Co. of the Carolinas, supra, we cite with approval Puritan Ins. Co. v. SuperiorCourt, 217 Cal.Rptr. 602, 607, 172 Cal.App.3d 877 (Dist.Ct.App. 1985), in which the court held:
 "The sanction of dismissal, where properly employed, is justified on the theory the party's refusal to reveal material evidence tacitly admits his claim or defense is without merit."
We have a long-established and compelling policy objective of affording litigants a trial on the merits whenever possible.Kirtland v. Fort Morgan Authority Sewer Service, Inc.,524 So.2d 600 (Ala. 1988); Jones v. Hydro-Wave of Alabama, Inc.,524 So.2d 610 (Ala. 1988).
In reference to default judgments and review of those judgments pursuant to Rule 55(c), A.R.Civ.P., motions, we have written:
 "[W]e acknowledge that, due to a trial judge's superior vantage point, the trial court is the more suitable arbiter for determining with accuracy the culpability of the defaulting party's conduct, and, for this reason, we will show great deference toward the trial court's decisions with respect to such culpability. . . . To facilitate an orderly functioning of the judicial system and to preserve the integrity of the court, parties who affront the court by intentionally disregarding trial dates, court orders, or procedural rules, with resulting unnecessary delay, should justifiably incur the ultimate sanction of losing their opportunity to defend. For the default judgment to be a potent sanction, the trial court, when confronting litigants who have manifested willfulness and bad faith in committing defaults, must not be unduly hampered in granting default judgments, and, subsequently, upholding those judgments when deciding Rule 55(c) motions."
Jones v. Hydro-Wave of Alabama, Inc., 524 So.2d at 616.
We adopt this same policy in regard to a party's failure to produce or a party's spoliation, when production has been requested. The trial court is the more suitable arbiter for determining with accuracy the culpability of the failure to produce or of the spoliation, and, for that reason, we will show great deference toward a trial court's decision with respect to such culpability. As we said in Jones, supra, trial courts, when confronting litigants who have manifested willfulness and bad faith in failing to produce or in allowing spoliation, must not be unduly hampered in granting the ultimate sanction of a denial of an opportunity to prosecute or defend the claim.
The trial court did not abuse its discretion in dismissing the case for Iverson's willful refusal to provide discovery. We therefore affirm the trial court's judgment.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] Because the Alabama and federal rules are virtually identical, a presumption arises that cases construing the federal rules are authority for construction of the Alabama rules. Weatherlyv. Baptist Medical Center, supra; Smith v. Wilcox County Boardof Education, 365 So.2d 659 (Ala. 1978); Assured Investors LifeInsurance Co. v. National Union Associates, Inc., 362 So.2d 228
(Ala. 1978).