I must respectfully dissent. I wrote the opinions inIverson v. Xpert Tune, Inc., 553 So.2d 82 (Ala. 1989), andCincinnati Insurance Co. v. Synergy Gas, Inc., 585 So.2d 822
(Ala. 1991), and this case is no Iverson or Cincinnati.
Fifty-two days before the fire that destroyed Larry Marks's home, Marks had bought a new heat pump from the defendant *Page 453 
Ray's Refrigeration. This unit was installed on May 29, 1992. Beginning several days after the heat pump was installed and continuing until the fire, every time the heat pump started to operate, lights in the house dimmed and then surged, light bulbs blew out, and breakers tripped repeatedly. Marks had never had these problems in his home before the new heat pump was installed. Ray's Refrigeration made numerous service calls during the 52 days between the installation of the heat pump and the fire. First, Ray's changed a breaker in the breaker box. On June 30, 1992 (20 days before the fire), agents of Ray's and of the defendant Associated Equipment (the heat pump distributor), inspected the heat pump. On July 14, 1992 (6 days before the fire), and three times on July 17, 1992 (3 days before the fire), Marks called Ray's because of "shooting bulbs," dimming and surging of lights, and breakers tripping in his breaker box. Ray's sent two linemen, who inspected the transformer, the weatherhead, and the connections at the meter base. When they removed the cover from the breaker box, they found in the breaker box, a new wire that was loosely connected. On July 17, 1992, Marks called Ray's when the 200-amp breaker kicked off. On July 18 and 19, 1992, the breaker kicked off and the heat pump stopped running. At 2:00 a.m. on July 20, 1992, Marks's home burned down. Marks was asleep in a second-story bedroom when his bedroom filled with smoke. Marks went down the back stairs to the basement. There was little smoke present in the basement. Outside, Marks saw fire coming from the top of the house in the attic area. The defendant Cullman Electric Cooperative ("Co-op") was called at 3:03 a.m. on July 20, 1992, to pull the destroyed power meter at the house. Ray's was informed of the fire at 8:00 a.m. on July 20, 1992, by Marks's daughter. Marks was hospitalized. An agent of Ray's telephoned the Co-op and said that a lawsuit was imminent. A Co-op employee immediately made a note for the Co-op's computer file on Marks — "Do not give out any information of this account to anyone without Kim Arndt's approving." Employees of Ray's were told "not to talk to anybody period." One week after the fire, Ray's notified the defendant Associated Equipment that Marks's house had burned. The fire site was cleared, but not until three months after the fire. The clearing was done to rebuild Marks's home.
Marks and his homeowner's insurer, Alfa Mutual Insurance Company, which had paid for the loss, sued Ray's, Associated Equipment, and the Co-op, alleging that they were liable for the loss of the house. The trial judge entered a summary judgment for the defendants, based on their contention that Marks had improperly destroyed evidence — the remains of the house and the heat pump — that would or may have been useful to the defendants.
I would not allow these plaintiffs' claim to be dismissed as a sanction for spoliation, because the defendants knew that litigation was imminent and that the fire scene would eventually be cleaned up, but took no action to investigate. I would not reward the defendants for their ostrichism.
The plaintiffs presented substantial evidence to support their claims against the defendants. Therefore, it was error to grant the defendants' motions for summary judgment. I would reverse and remand. This controversy should be resolved by the trier of the facts.