Rel: November 26, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

### SC-2025-0227
_____

## Southampton 100, LLC

### v.

## Alabama Department of Revenue

### Appeal from Jefferson Circuit Court
### (CV-21-903531)

COOK, Justice.

This appeal arises from the dismissal of an action ordered as a sanction for alleged misconduct during discovery. The underlying

litigation concerns a dispute over the amount of ad valorem taxes owed by the appellant, Southampton 100, LLC ("Southampton"), for a low-income-housing property that it purchased in 2019. Southampton challenged multiple tax-year valuations assessed for the property by the Jefferson County Tax Assessor's Office before the Jefferson County Board of Equalization and Adjustments ("the Board"). Although the Board adjusted some of those valuations, Southampton was not satisfied with the assessments.

Over the next few years, Southampton appealed those assessments in separate actions to the Jefferson Circuit Court. The circuit court then consolidated Southampton's appeals into one action. The Alabama Department of Revenue ("ADOR") subsequently filed a notice of appearance in that appeal and thereafter became the named "appellee."

During the course of Southampton's appeal, a number of discovery disputes arose between the parties, many of which prompted motions for sanctions against Southampton by ADOR. The final straw came when ADOR sought to depose one of Southampton's corporate representatives in person. Southampton had previously provided one of its corporate representatives for an in-person deposition and then offered to have its

2

second corporate representative, a resident of California, testify via Zoom, a videoconferencing service, that same day. ADOR refused that offer and, instead, demanded that Southampton's second corporate representative travel to Alabama so that he could be deposed in person.

Southampton objected to ADOR's demand on the basis that having its second corporate representative fly to Alabama was overly burdensome given that the parties had already rescheduled those depositions on multiple occasions. In response, ADOR issued another deposition notice. Southampton, however, never sought a protective order.

Following additional disputes over this issue, including a motion for sanctions, ADOR filed another motion for sanctions in which it asked the circuit court to dismiss Southampton's tax appeal. Without holding a hearing, the circuit court granted the motion and dismissed Southampton's tax appeal with prejudice the very next day.

Although a trial court has discretion to sanction a party for willfully failing to comply with discovery requests, as explained below, the record before us does not indicate that Southampton willfully did so in this case. We therefore reverse and remand.

Facts and Procedural History

I. The Underlying Property-Tax Appeal

Property-tax values for each tax year are set by the county tax-assessing official who appraises real property using the prior valuation from October 1 of the previous year, making any adjustments to that valuation that the assessor determines is legal and proper. See § 40-7-25, Ala. Code 1975. The assessor then certifies all valuations to the local board of equalization, which reviews, revises, and fixes the valuations as listed by the assessor. See §§ 40-3-16, -17, and -18, Ala. Code 1975, and § 40-7-27, Ala. Code 1975.

On July 16, 2019, Southampton purchased a low-income-housing tax-credit property for $2,570,000. Following that transaction, the Jefferson County Tax Assessor's Office assessed the fair market value of the property for the 2021 tax year. That assessed value was $3,823,800.

Southampton disagreed with the assessor's assessed value and asked the Board to adjust it. According to the record, the Board lowered that value to $3,250,000.

In December 2021, Southampton appealed that assessment to the Jefferson Circuit Court. See §§ 40-3-24 and -25, Ala. Code 1975. Over the

next few years, Southampton appealed the Board's additional tax assessments for the property for 2022, 2023, and 2024. As stated previously, the circuit court then consolidated those appeals into one appeal.

As part of that appeal, Southampton requested a jury trial to determine the fair market value of the property. As noted previously, ADOR subsequently filed a notice of appearance, see § 40-3-26(b), Ala. Code 1975, and thereafter became the named "appellee" in the appeal below.

Although the circuit court initially set the jury trial in this case for October 16, 2023, the trial was continued to February 24, 2025. The circuit court thereafter issued a new scheduling order on October 28, 2024, in which it made clear that any further requests for a continuance in the case would be disfavored and would require "good cause" to be shown. The circuit court explained that the fact "that discovery  has not been completed, or other such reasons will not be considered 'good cause'" for a continuance. It also directed "[a]ll discovery … to be completed within 60 days of the trial date [February 24, 2025]" -- i.e., by December 26, 2024. The scheduling order included the following discovery provision

under the Birmingham Differential Case Management Plan:[1]

> "With respect to Rule 30(b)(6) of the Alabama Rules of Civil Procedure, <u>if corporate representatives are not located within the State of Alabama, a party being asked to tender such representatives for deposition will be expected to produce only one such representative in Jefferson County, Alabama absent agreement of the parties to the contrary, or unless otherwise ordered. Any further depositions of additional corporate representatives would be expected to be held at the deponents' location</u>. Should the party for whom the representative will be testifying reasonably question the court's personal jurisdiction, this party may object to producing a witness in Jefferson County until the issue is resolved."

(Emphasis added.)

## II. The Parties Engage in Discovery

On September 5, 2023, ADOR served its interrogatories and requests for production on Southampton. Over a year later, on October 16, 2024, Southampton responded to ADOR's discovery requests.

After ADOR reviewed Southampton's response to its discovery

---

[1]The Birmingham Division of Jefferson County implemented the Birmingham Differential Case Management Plan in 1990. 1 Gregory C. Cook, <u>Alabama Rules of Civil Procedure Annotated</u>, Rule 26, Author's Comments § 26.21 (5th ed. 2018). Among other things, this plan "creates three different tracks for cases (expedited, standard and complex)" and "provides for differing calendars for each and provides for differing amounts of discovery allowed under each." <u>Id.</u> In other words, the plan functions as a part of the scheduling order in each case. For discovery matters, this plan is merely a starting point for a trial court and can be modified by the court as needed.

requests, it filed a motion to compel discovery because, it said, Southampton had not provided substantive responses for many of its interrogatories and did not produce the documents it had requested concerning Southampton's property. It also asked the circuit court to continue the discovery deadline from December 26, 2024, to January 24, 2025.

In response, Southampton asserted that it had sufficiently answered ADOR's interrogatories. It also noted that those interrogatories exceeded 40 in number. See Rule 33(a), Ala. R. Civ. P.

The circuit court granted ADOR's motion to compel and ordered Southampton to fully respond to ADOR's interrogatories and requests for production by January 10, 2025. The circuit court also granted ADOR's motion to continue discovery and set the new discovery deadline for January 24, 2025.

When Southampton finally filed its supplemental responses to ADOR's discovery requests, it did so four days after the circuit court's January 10, 2025, deadline. As a result, ADOR immediately moved for sanctions against Southampton and also moved to dismiss the property-tax appeal based on Southampton's failure to supplement its responses

7

in a timely manner. Without holding a hearing, the circuit court denied ADOR's motion.

### III. The Depositions of ADOR's Designated Representative and Southampton's Corporate Representatives

On January 17, 2025, ADOR served its Rule 30(b)(6), Ala. R. Civ. P., notice seeking to depose Southampton's corporate representative. That notice outlined 20 different topics concerning the calculation of the subject property's value that it wanted Southampton's corporate representative to address. According to the record, Southampton identified its property manager, Adam Castleberry, and one of its owners, Ari Majer, as its corporate representatives.

To coincide with Southampton's deposition of ADOR's designated representative, Craig Hall, ADOR set Southampton's corporate-representative depositions for January 23, 2025. However, the depositions were rescheduled twice to accommodate both Southampton's and ADOR's counsel, resulting in a new deposition date of January 29, 2025.

That day, Southampton deposed Hall. At the conclusion of Hall's deposition, ADOR deposed Castleberry. Castleberry's deposition lasted about three hours. During that time, he answered questions related to

most of the topics that ADOR had listed in its deposition notice, covering 14 of the 20 topics. There were, however, some topics about which Castleberry admitted that he had no knowledge. For instance, Castleberry explained that he could not give any testimony concerning the circumstances surrounding the purchase of the property or its purported value. Instead, he told ADOR that Majer would be the one to ask for that information.

Following Castleberry's deposition, Southampton immediately offered ADOR the opportunity to depose Majer, a resident of California, via Zoom that same day. It is undisputed that ADOR's counsel declined that offer, stating: "I want to take [the deposition] in person."

Southampton's counsel asked ADOR's counsel whether Southampton should "move for a [p]rotective [o]rder [b]ecause it's unduly burdensome to have [Majer] fly [to Alabama] for [ADOR] to take his deposition." ADOR's counsel replied: "You can do that." However, counsel for Southampton never did so.

### IV. ADOR's Renewed Motion for Sanctions and Motion to Compel Denied by the Circuit Court

Although Southampton never moved for a protective order, ADOR took the initiative of bringing this dispute to the circuit court for

resolution. On February 7, 2025, ADOR filed a renewed motion for sanctions and an alternative motion to compel Majer's deposition in which it specifically requested that he be ordered to appear in person for his deposition. In its motion, ADOR argued, among other things, that Southampton had willfully failed to respond to discovery by not producing an individual that was competent to testify to all the topics it had listed on its Rule 30(b)(6) deposition notice. ADOR further argued that Majer was required to appear for his deposition in person because its deposition notice specifically asked for Southampton's corporate representative to physically appear for a deposition at Southampton's counsel's office in Birmingham.

On February 11, 2025, Southampton filed its response, arguing that it had complied with all of ADOR's discovery requests. It also asserted that because the parties had previously rescheduled the corporate-representative depositions multiple times, it was concerned that the same would happen again, thus making any effort to fly Majer to Alabama from California unduly burdensome.

However, in an effort to cooperate with ADOR's request, Southampton offered "to make Mr. Majer available for deposition before

going on the witness stand." In other words, it offered to have Majer sit for an in-person deposition immediately before his appearance at the trial of its tax appeal. Southampton then filed its witness list, which included Majer as a witness.

On February 12, 2025, the circuit court denied ADOR's renewed motion for sanctions and motion to compel, without holding a hearing. Two hours later, ADOR filed a motion to reconsider the renewed motion for sanctions and, alternatively, a motion to compel in which it again argued that Majer should be required to come to Alabama for his deposition.

The next day, Southampton filed a response to the motion to reconsider in which it maintained that "Mr. Majer intends to be in town for the trial, assuming it goes forward, with a schedule to fly in from California on … February 24, 2025." (Emphasis added.) It also stated that Majer "can be available for deposition Monday afternoon [February 24], if this court so orders."

The record does not indicate whether the circuit court ever ruled on ADOR's renewed motion for sanctions and motion to compel.

V. ADOR's Request to Continue the Trial of Southampton's Tax Appeal and Subsequent Attempt to Depose Majer

On February 18, 2025, ADOR asked the circuit court to continue the trial scheduled for February 24, 2025, so that it could depose Majer in person since "Mr. Majer is already scheduled to be in Jefferson County on … February 24, 2025 …." ADOR also asserted that the continuance was necessary so that its expert could be deposed by Southampton. The circuit court granted ADOR's motion to continue and rescheduled the trial to March 10, 2025.

On February 19, 2025, ADOR served a deposition notice for Majer and asked for that deposition to occur on February 25, 2025, in Birmingham. The day before the deposition was scheduled to take place, ADOR's counsel emailed Southampton's counsel requesting confirmation that "Majer will be present in person at the deposition noticed for [February 25, 2025]." A few hours later, Southampton's counsel replied: "[N]o [Majer] is not going to be here."

ADOR's counsel then asked Southampton's counsel to provide another day that week for Majer to be deposed, to which Southampton's counsel replied: "I don't have any availability this week." At no point did Southampton's counsel offer any alternative dates for this deposition.

VI. ADOR's Subsequent Motion for Sanctions and the Dismissal of Southampton's Tax Appeal

12

On February 25, 2025, ADOR served yet another deposition notice for Majer. That same day, at 5:10 p.m., it moved for sanctions against Southampton. In support of its request for sanctions, ADOR incorporated the legal arguments it had made in its prior motions for sanctions and also asked the circuit court to dismiss Southampton's tax appeal for Southampton's failure to comply with its deposition notice. The next day, at 1:28 p.m., without holding a hearing, the circuit court granted ADOR's motion for sanctions and dismissed Southampton's tax appeal with prejudice, pursuant to Rule 37(b)(2), Ala. R. Civ. P. Its order did not contain any explanation or rationale for its decision.

On March 10, 2025, at 2:01 p.m., Southampton filed a motion to alter, amend, or vacate the circuit court's order in which it argued that it had not violated any discovery order and noted that the demand for Majer to appear in person contradicted the circuit court's scheduling order incorporating the Birmingham Differential Case Management Plan's corporate-representative limitation. Because Castleberry had already given a deposition in Birmingham as one of its corporate representatives, Southampton argued, Majer was not required to do the same. Alternatively, Southampton requested a hearing on the postjudgment

13

motion.

An hour and seven minutes later, the circuit court denied Southampton's motion without holding a hearing. This appeal followed.

Standard of Review

In reviewing a trial court's order on a motion for sanctions related to a discovery dispute, we apply the following standard of review:

> "'The choice of discovery sanctions is within the trial court's discretion and will not be disturbed on appeal absent gross abuse of discretion, Johnson v. Langley, 495 So. 2d 1061 (Ala. 1986); Deaton, Inc. v. Burroughs, 456 So. 2d 771 (Ala. 1984); Weatherly v. Baptist Medical Center, 392 So. 2d 832 (Ala. 1981), and then only upon a showing that such abuse of discretion resulted in substantial harm to appellant. Edward Leasing Corp. v. Uhlig & Associates, Inc., 785 F.2d 877 (11th Cir. 1986).'"

Daily v. Esser, 391 So. 3d 268, 287-88 (Ala. 2023) (quoting Iverson v. Xpert Tune, Inc., 553 So. 2d 82, 87 (Ala. 1989)). "We now refer to that standard as a trial court's 'exceeding its discretion.' ... However, the standard itself has not changed." Kyser v. Harrison, 908 So. 2d 914, 918 (Ala. 2005).

Discussion

On appeal, Southampton argues that the circuit court exceeded its discretion by dismissing its tax appeal with prejudice, pursuant to Rule

14

37(b)(2). Southampton notes that our caselaw requires that a party willfully disobey a discovery order before a trial court can enter such a sanction. According to Southampton, the circuit court never issued an order requiring it to make Majer available for a deposition in Birmingham. Southampton also asserts that it never engaged in any willful conduct preventing ADOR from being able to depose Majer because it offered to make Majer immediately available for a deposition via Zoom and then again right before the trial of its tax appeal, which was set to begin in February 2025. With no evidence of any willful conduct on its part, Southampton contends, the circuit court exceeded its discretion in dismissing its tax appeal with prejudice, and, it asserts, that decision must be reversed.

In response, ADOR argues that Rule 37(d) empowers a trial court to dismiss an action following a corporate representative's failure to appear for a deposition regardless of whether the trial court has previously issued a separate order directing the corporate representative to appear. In the present case, ADOR contends that Southampton was required to make Majer available for an in-person deposition in Birmingham because Southampton identified him as one of its corporate

representatives. Because Southampton has repeatedly failed to make Majer available for an in-person deposition, ADOR contends, Southampton has engaged in a willful refusal to provide discovery and, thus, the dismissal of Southampton's tax appeal with prejudice was warranted here.

### I. A Party's Obligation to Cooperate with Discovery Requests Under Alabama Law

Generally, under the Alabama Rules of Civil Procedure, the discovery process is designed to work without the need for constant intervention by our trial courts. See, e.g., Mobile Invs., LLC v. Corporate Pharmacy Servs., Inc., 415 So. 3d 1018, 1025 (Ala. 2024); see also Rule 1(c), Ala. R. Civ. P. ("[The Alabama Rules of Civil Procedure] shall be construed and administered to secure the just, speedy and inexpensive determination of every action."); Othni Lathram & Anil A. Mujumdar, LexisNexis Practice Guide: Alabama Civil Procedure § 6.83 (Matthew Bender 2025) ("The plan of Alabama's discovery Rules still contemplates that the parties will employ discovery, by and large, without judicial supervision. ... Only when counsel or parties cannot agree need the court intervene …."). This is so because our courts expect litigants to cooperate to resolve discovery disputes if possible. See Ex parte AMI W. Alabama

Gen. Hosp., 582 So. 2d 484, 487 (Ala. 1991) ("There should be few [discovery] disputes, because lawyers acting professionally should be able to agree on most discovery issues….").

Once a Rule 30(b)(6) deposition notice has been duly served, it is the obligation of the responding party to take any necessary action to identify its corporate representative and to make him or her available for a deposition. See Ex parte Hankook Tire Am. Corp., 400 So. 3d 585, 591 (Ala. 2023) (explaining that the trial court may sanction the responding party when the designated corporate representative fails to appear for a properly noticed deposition). If the deposition notice is objectionable or is otherwise impractical (for instance, if the witness or counsel has scheduling conflicts), the responding party should promptly raise those concerns with opposing counsel and attempt to negotiate a resolution. See Rule 26(c), Ala. R. Civ. P. (requiring counsel to certify that they attempted to resolve discovery concerns "through correspondence or discussions with opposing counsel" before moving for a protective order).

If a resolution cannot be reached, it is the responsibility of the party to whom a Rule 30(b)(6) deposition has been served to file a motion for a protective order -- normally before the date of the deposition. See Rule

17

26(c) ("Upon motion by a party … and for good cause shown, the court in which the action is pending … may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ….").

As noted above, counsel for Southampton recognized this obligation when its counsel asked whether Southampton should "move for a [p]rotective [o]rder [b]ecause it's unduly burdensome to have [Majer] fly [to Alabama] for [ADOR] to take his deposition," but failed to file such a motion.

In addition, after the circuit court continued the trial -- based upon a motion referring to the need to depose Majer -- counsel for Southampton failed to notify ADOR's counsel that it would no longer be possible to depose Majer on the previously scheduled trial date. And, when contacted, Southampton's counsel simply stated that they had no other dates available that week and failed to provide any alternative dates. In short, counsel for Southampton neither found a cooperative solution to this discovery issue with ADOR nor filed a motion for a protective order as the Alabama Rules of Civil Procedure counsel. However, as discussed below, this does not mean that Southampton is not entitled to relief here.

18

## II. Several Sanctions, Including Dismissal, Are Available When a Party Fails to Produce its Corporate Representative for a Deposition

As noted by ADOR, when a party inexcusably fails to produce its corporate representative for a properly noticed Rule 30(b)(6) deposition, a trial court has a number of powerful sanctions at its disposal under Rule 37.

In the present case, the circuit court dismissed Southampton's tax appeal with prejudice, pursuant to Rule 37(b)(2). Under that rule, "[i]f a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) … to testify on behalf of a party fails to obey an order to provide or permit discovery," the sanctions available to a trial court include, among others:

> "(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

> "(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

> "(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, <u>or dismissing the action or proceeding or any part thereof</u>, or rendering a judgment by default against the disobedient party

...."

Rule 37(b)(2) (emphasis added).

As stated previously, according to Southampton, the circuit court never issued an order requiring it to make Majer available for a deposition in Birmingham. Instead, the circuit court expressly <u>denied</u> ADOR's motion to compel that very deposition and then failed to rule upon ADOR's renewed motion to compel that deposition.

However, as ADOR correctly notes, Rule 37(d) empowers a trial court to issue the sanctions listed under Rule 37(b)(2) for a the failure to appear for a deposition, even in the absence of a prior discovery order. That rule states, in relevant part:

> "If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a)[, Ala. R. Civ. P.,] to testify on behalf of a party <u>fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice</u>, … the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others <u>it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule</u>."

Rule 37(d) (emphasis added); <u>see also</u> <u>Ex parte Hankook Tire</u>, 400 So. 3d at 591 (noting that a court order is not "'required to bring Rule 37(d) into play'" (citation omitted)). Stated simply, even in the absence of a

20

discovery order, several sanctions, including dismissal, are available to a trial court for a party's failure to produce a corporate representative for a Rule 30(b)(6) deposition.

Even though the sanction of dismissal is available as an option under Rule 37(b)(2)(C), our Court has previously explained that that sanction must be "proportionate to and compensatory of the particular discovery abuse committed." Ex parte Seaman Timber Co., 850 So. 2d 246, 258 (Ala. 2002). This is so because our Court has "a long-established and compelling policy objective of affording litigants a trial on the merits whenever possible." Iverson v. Xpert Tune, Inc., 553 So. 2d 82, 89 (Ala. 1989). Because "[w]e recognize that the sanction of dismissal is the most severe sanction that a court may apply," our Court has previously explained that

> "[j]udicial discretion must be carefully exercised to assure that the situation warrants the imposition of such a sanction. Weatherly v. Baptist Medical Center, [392 So. 2d 832 (Ala. 1981)]; Durham v. Florida East Coast Ry., 385 F.2d 366 (5th Cir.1977); Brown v. Thompson, 430 F.2d 1214 (5th Cir. 1970). Dismissal orders must be carefully scrutinized, and the plaintiff's conduct must mandate dismissal. Smith v. Wilcox County Board of Education, 365 So. 2d 659 (Ala. 1978)."

Id. at 87.

In particular, our Court has emphasized that "willfulness" is a key

21

factor in determining whether the severe sanction of dismissal should be applied, stating:

> "We have held that 'willfulness' on the part of the noncomplying party is a key factor supporting a dismissal. See Weatherly v. Baptist Medical Center, [392 So. 2d 832 (Ala. 1981)]; see also National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976); Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 78 S. Ct. 1087, 2 L. Ed. 2d 1255 (1958). If one party has acted with willful and deliberate disregard of reasonable and necessary requests for the efficient administration of justice, the application of even so stringent a sanction as dismissal is fully justified and should not be disturbed. See Trans World Airlines, Inc. v. Hughes, 332 F.2d 602 (2d Cir.1964), cert. dismissed, 380 U.S. 248, 85 S. Ct. 934, 13 L. Ed. 2d 817 (1965); 1 Lyons, Alabama Practice (1973) (Author's Comments to Rule 37); see also Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062 (2d Cir. 1979)."

Id. at 87-88; see also Mobile Invs., 415 So. 3d at 1023 (quoting Iverson).

In addressing what level of conduct rises to the level of "willfulness" in the context of discovery misconduct, our Court has explained that "'willfulness' might be found when '"a party intentionally or willfully fail[s] to attend a deposition"' or does '"not offer[] an explanation for his failure to comply [with discovery requests]."'" Mobile Invs., 415 So. 3d at 1023 (quoting Ex parte Seaman Timber, 850 So. 2d at 256 (other citations omitted)); see also Weatherly v. Baptist Med. Ctr., 392 So. 2d 832, 835

22

(Ala. 1981) ("[T]he 'willfulness' of plaintiff's refusal to answer interrogatories in this case is a key criterion to the imposition of the drastic sanction of dismissal.").

In light of the foregoing, the question we must answer here is whether Southampton's conduct presents a clear example of "willfulness" that would support the circuit court's decision to dismiss its tax appeal with prejudice.

III. Applying These Legal Principles to the Present Case

In answering this question, we find our recent decision in Mobile Investments, supra, to be instructive. In that case, the plaintiff sought to depose the defendants' corporate representative multiple times over two years, even accommodating the defendants' schedule. Id. at 1020-21 However, the corporate representative repeatedly canceled the deposition, allegedly due to scheduling conflicts. Id. at 1022. The plaintiff moved to compel the deposition, and the trial court granted the motion. Id. at 1020-21.

However, even after the trial court granted the plaintiff's motion, the defendants' corporate representative again failed to sit for a deposition. Id. at 1021. As a result, the plaintiff moved for sanctions and

asked the trial court to enter a default judgment against the defendants pursuant to Rule 37(b)(2)(C). Id. At that time, the trial court denied the plaintiff's motion but issued an order stating that the defendants must provide available dates for the corporate representative's deposition within 30 days. Id. The trial court also warned the defendants that it would likely enter a default judgment against them should their corporate representative again fail to appear for his deposition. Id. When the defendants did not provide the plaintiff with dates for the corporate representative's deposition, the plaintiff renewed its motion, and the trial court entered a default judgment as a sanction against the defendants.[2] Id. at 1021-22.

On appeal, our Court held that the trial court did not exceed its discretion by entering a default judgment against the defendants. Id. at 1023. We reasoned that the defendants' "willfulness" was clear considering their failure to (1) respond to the plaintiff's discovery requests multiple times, (2) have their corporate representative sit for a

---

[2]As explained above, Rule 37(b)(2)(C) authorizes a trial court to terminate the case as a sanction for a discovery violation either by dismissal, if the plaintiff is at fault, or by default judgment, if the defendant is at fault. In substance, these are functionally the same remedy.

deposition after the plaintiff accommodated the defendants' schedule, and (3) follow the trial court's three orders compelling their corporate representative's deposition. Id.

Unlike the defendants in Mobile Investments, Southampton did not attempt to willfully prevent its corporate representative from being deposed by ADOR. As explained above, Southampton designated two corporate representatives in response to ADOR's Rule 30(b)(6) notice -- Castleberry and Majer. Castleberry appeared and testified to 14 of the 20 topics identified in ADOR's Rule 30(b)(6) deposition notice. After Castleberry's deposition concluded, Southampton immediately offered ADOR the opportunity to depose its second corporate representative -- Majer, a resident of California -- via Zoom that same day. ADOR's counsel declined that offer.

In response, ADOR filed a renewed motion for sanctions and an alternative motion to compel Majer's deposition in which it specifically requested that he be ordered to appear in person for his deposition. The circuit court denied ADOR's renewed motion for sanctions and motion to compel. Two hours later, ADOR filed a motion to reconsider.

In its response to the motion to reconsider, Southampton

25

maintained that "Mr. Majer intends to be in town <u>for the trial, assuming it goes forward</u>, with a schedule to fly in from California on … February 24, 2025." (Emphasis added.) The circuit court never ruled on ADOR's motion for reconsideration.

To further complicate an already messy situation, ADOR asked the circuit court to continue the trial scheduled for February 24, 2025, so that it could depose Majer in person since "Mr. Majer is already scheduled to be in Jefferson County on … February 24, 2025 …." The circuit court granted ADOR's motion to continue and rescheduled the trial to March 10, 2025. ADOR thereafter served another notice demanding that Majer be made available for an in-person deposition. Majer did not appear, and Southampton did not attempt to reschedule that deposition. As a result, ADOR renewed its motion for sanctions, and the circuit court, without holding a hearing or otherwise affording Southampton an opportunity to respond, dismissed Southampton's tax appeal with prejudice the next day.

As our caselaw above makes clear, "the sanction of dismissal is the most severe sanction that a court may apply" and should be upheld only when a party has acted with "willful and deliberate disregard" for

reasonable and necessary discovery requests. Iverson, 553 So. 2d at 87.

A dismissal under Rule 37(b)(2)(C) "must be based upon 'evidence from

which [the trial court] could infer that [a party's] failure to comply with

[an opponent]'s discovery requests and the trial court's orders was the

result of [the party's] conscious or intentional failure to act, not his

accidental or involuntary noncompliance.'" W.W.H. v. D.L.H., 352 So. 3d

765, 769 (Ala. Civ. App. 2021) (quoting Smith v. Davidson, 58 So. 3d 177,

181-82 (Ala. Civ. App. 2010)).

While we do not condone Southampton's conduct here, there is

nothing before us that indicates that Southampton willfully and

deliberately disregarded ADOR's attempts to obtain information from

Majer. In fact, the record before us indicates that Southampton was not

trying to prevent the deposition from taking place but simply wanted the

deposition to be conducted in a different way.[3]

Moreover, unlike in Mobile Investments, in which the trial court

---

[3]We note that Southampton argued both in its postjudgment motion below and now on appeal that ADOR's demand that Majer appear in person would violate the part of the circuit court's scheduling order that incorporated the Birmingham Differential Case Management Plan. ADOR disputes the meaning and applicability of that provision in the scheduling order. Given our resolution of this appeal, we need not decide the meaning or applicability of that provision in this case.

directed the defendants to produce their corporate representative for a deposition or face the consequence of a default judgment, here the circumstances leading up to the circuit court's dismissal of Southampton's tax appeal were ambiguous and likely caused some confusion as to what was expected of Southampton. For instance, at that point in the litigation, the circuit court had recently denied ADOR's renewed motion for sanctions and motion to compel Majer's in-person deposition. Moreover, when Southampton agreed to make Majer available for a deposition the day of the scheduled February 2025 trial, it agreed to do so "assuming [the trial] goes forward." When the circuit court chose to continue the trial to a later date, it further muddied the waters as to whether Southampton still had an obligation to make Majer available for a deposition on February 24, 2025, or if it could wait and make him available for an in-person deposition the day of the new trial date -- March 10, 2025.

Given the contentiousness between the parties and the circuit court's denial of ADOR's motion to compel Majer's in-person deposition, the circuit court, before dismissing the tax appeal with prejudice, should have specified for the parties whether it expected Southampton to make

28

good on its prior statement that it would make Majer available for a deposition (1) on February 24, 2025 (even though he would no longer be in Birmingham "for the trial" on that date) or (2) on a date immediately before the new March 10, 2025 trial date. It also should have given Southampton an opportunity to respond to ADOR's renewed motion for sanctions before entering the sanction of dismissal less than one day after the filing of the motion. See, e.g., Ex parte Sansom, [Ms. SC-2025-0278, Sept. 19, 2025] ____ So. 3d ____ (Ala. 2025) (holding that the trial court did not give the plaintiffs a reasonable opportunity to respond to the defendant's motion to transfer the action under the forum non conveniens doctrine when the trial court granted the defendant's motion to transfer one day after the motion was filed without an opportunity for plaintiffs' reply). In any event, because there is no evidence indicating that Southampton willfully tried to prevent Majer's deposition from taking place or willfully disobeyed an unambiguous order of the circuit court, we hold that the circuit court exceeded its discretion by dismissing Southampton's tax appeal with prejudice.

## Conclusion

Dismissal of an action with prejudice is a drastic sanction that

should be imposed only when a party has acted with "willful and deliberate disregard" for reasonable and necessary discovery requests. Iverson, 553 So. 2d at 87. Because the record indicates that Southampton made an effort to make Majer available to ADOR for a Rule 30(b)(6) deposition, provided one other corporate representative, and was confronted with an ambiguous procedural situation, it did not "willfully" attempt to prevent discovery. We therefore conclude that the circuit court exceeded its discretion in dismissing Southampton's tax appeal with prejudice on this basis, despite our concerns noted above regarding the conduct of Southampton. Accordingly, we reverse the circuit court's judgment and remand the case for proceedings consistent with this opinion.[4]

REVERSED AND REMANDED.

Stewart, C.J., and Shaw, Wise, and Sellers, JJ., concur.

Cook, J., concurs specially, with opinion.

---

[4]Based on our holding here, we need not address the remaining arguments raised by the parties on appeal. See Jackson Hosp. & Clinic, Inc. v. Murphy, 343 So. 3d 490, 498 n.3 (Ala. 2021) (stating that the Court would pretermit discussion of remaining issues in light of the dispositive nature of another issue).

COOK, Justice (concurring specially).

Although I am the author of the main opinion, I write specially to address whether a trial court must hold a hearing on a contested dispositive motion, such as a motion for sanctions like the one at issue in this case.

As noted in the main opinion, ADOR filed its motion for sanctions on February 25, 2025, at 5:10 p.m. The Jefferson Circuit Court granted the motion and dismissed the tax appeal brought by Southampton with prejudice the next day at 1:28 p.m., without giving Southampton an opportunity to respond to the motion either in writing or at a hearing. Given our resolution of the key issue in this appeal, there was no need for our Court to address whether the circuit court's failure to hold a hearing was improper.

However, in my view, the norm and best practice should be for a trial court to hold a hearing before granting such a contested dispositive motion. This position is supported not only by the Alabama Rules of Civil Procedure but also by our caselaw.

For example, Rule 78, Ala. R. Civ. P., contemplates the need for a trial court to hold a hearing in most situations. That rule states, in

31

relevant part:

> "Each circuit court <u>shall establish regular times and places, at intervals sufficiently frequent for the prompt dispatch of business, at which motions requiring notice and hearing may be heard and disposed of</u>; but the judge at any time or place and on such notice, if any, as the judge considers reasonable may make orders for the advancement, conduct, and hearing of actions."

(Emphasis added.)

However, Rule 78 also provides certain specific exceptions to this hearing requirement. The existence of these exceptions strongly suggests that hearings on contested dispositive motions should otherwise be the norm. For instance, the rule permits a trial court to "make provision by rule or order for the submission and determination of motions <u>not</u> seeking final judgment <u>without oral hearing</u> upon brief written statements of reasons in support and opposition." Rule 78 (emphasis added). In other words, a hearing would generally be necessary if the motion <u>is</u> "seeking final judgment."

Likewise, the rule states that, "<u>unless there is a request for oral hearing</u>, the court may enter an order <u>denying</u> a motion to dismiss without oral hearing." Rule 78 (emphasis added). In other words, unless a party specifically asks for a hearing, the trial court may deny a Rule

32

12, Ala. R. Civ. P., motion to dismiss without holding a hearing. The need to provide express, textual exceptions in Rule 78 is a clear indication that the rule otherwise requires a hearing before the granting of contested dispositive motions.

Our caselaw supports my reading of this rule, specifically in the context of summary-judgment motions. For example, in Zieman v. Zieman Speegle, LLC, 295 So. 3d 66 (Ala. 2019), our Court reversed a summary judgment after the trial court had failed to hold a hearing before ruling on the motion. In support of our holding, our Court explained that "'Rule 56(c), Ala. R. Civ. P., itself entitles the parties to a hearing on a motion for summary judgment.'" Id. at 70 (quoting Van Knight v. Smoker, 778 So. 2d 801, 805 (Ala. 2000)).

Our Court also cited Rule 78. We noted that, although Rule 78 allows trial courts to rule on some motions without holding a hearing, a hearing is necessary on motions "'seeking final judgment,'" such as a motion for a summary judgment. Id. (quoting Rule 78). We also noted that the Committee Comments on 1973 Adoption of Rule 78 state that "'the rule prohibits the granting of a Motion Seeking Final Judgment such as a Motion for Summary Judgment without giving the parties an

33

opportunity to be heard orally,'" thus, supporting our position. Id. (emphasis added in Zieman).

More recently, in Cartron v. Board of Governors of Valley Hill Country Club, Inc., 372 So. 3d 1175 (Ala. 2022), our Court reversed a summary judgment after the trial court had failed to hold a hearing before entering its judgment. In support of our decision, our Court relied on the text of Rule 56(c), Ala. R. Civ. P., and explained that the text of that rule requires a hearing except in "certain limited circumstances." Id. at 1178.

There are sound reasons for requiring a hearing before granting any contested dispositive motion. Because these motions could lead to a ruling terminating the case, hearings provide the trial court with a greater opportunity to understand the parties' claims and defenses. Hearings also serve a practical function -- they prompt busy, practicing lawyers to prepare and respond to the motions in a timely manner. The proper functioning of our legal system is best served when both sides are fully engaged and afforded the opportunity to timely present their strongest arguments to the trial court.

Beyond the types of motions discussed above, there are other

contested dispositive motions for which a hearing may be even more crucial because of the nature of the motions themselves. Such motions include Rule 37, Ala. R. Civ. P., motions for sanctions for discovery misconduct and Rule 41(b), Ala. R. Civ. P., motions for involuntary dismissal due to a failure to prosecute. These motions inquire into the conduct of the litigation and the lawyers -- which occur, in part, outside of the record -- rather than just the hard facts of the underlying dispute. Because of the nature of these types of motions, the trial court benefits from the opportunity to hear from the lawyers and to ask questions regarding whether the failure to comply with discovery obligations or the failure to prosecute was justified, excusable, or not sufficiently serious to justify a dismissal. For instance, the trial court would benefit from the opportunity to hear whether there was a sound reason for a lawyer's failure to prosecute the case or comply with discovery or whether a legitimate communication problem existed between the parties.

Although conducting a hearing before granting a contested dispositive motion is the best practice in my view, I am not yet convinced that a trial court must do so in all cases and situations. Cf. Henderson v. G & G Corp., 582 So. 2d 529, 531 (Ala. 1991) (affirming dismissal for

failure to prosecute when plaintiff failed to appear at a summary-judgment hearing after almost six years of inactivity and repeated court-ordered warnings); <u>Watts v. Mitchell</u>, 617 So. 2d 693, 694 (Ala. Civ. App. 1993) (affirming dismissal for failure to prosecute when plaintiff failed to appear at hearing on motion to dismiss for failure to state a claim and did not offer a reason for the absence); Rule 55(b)(2), Ala. R. Civ. P. (allowing entry of default judgment without three days' notice of hearing if the defendant fails to appear at scheduled trial date).

While I am certain that there are contested dispositive motions and procedural situations that I cannot envision today, as an appellate court, our Court trusts trial judges to use their discretion in handling their dockets and managing the recurring disputes between counsel. By raising the points above, my hope is that our talented and busy trial judges will always make conducting hearings on contested dispositive motions the norm in their courtrooms across our State.